IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT B. C.,[1]                           6:18-cv-01738-BR

      Plaintiff,                      OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.


**KATHERINE L. EITENMILLER**
**BRENT WELLS**
Harder, Wells, Caron & Manning. P.C.
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

      Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

---

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case. Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**LEISA A. WOLF**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3621

　　　　　Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Scott B. C. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

On July 14, 2015, Plaintiff protectively filed his application for DIB benefits. Tr. 13, 192.[2] Plaintiff alleged a

_____

[2] Citations to the official Transcript of Record (#7) filed by the Commissioner on April 4, 2019, are referred to as "Tr."

disability onset date of February 4, 2010, but later amended the date to April 14, 2015.  Tr. 13, 34, 292.  Plaintiff's application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on July 24, 2017.  Tr. 32-78.  Plaintiff and a vocational expert (VE) testified at the hearing.  Plaintiff was represented by an attorney at the hearing.

On October 27, 2017, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 13-25.  Plaintiff requested review by the Appeals Council.  On July 26, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner.  Tr.1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On September 29, 2018, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born on March 21, 1979.  Tr. 24, 192.  Plaintiff was 36 years old on his amended alleged disability onset date.  Plaintiff has a high-school education and has completed two years of college.  Tr. 24, 220.  Plaintiff has

past relevant work experience as a parts advisor/parts clerk, police officer, intern/police aide, and mechanic.  Tr. 23.

Plaintiff alleges disability due to traumatic brain injury (TBI), post-traumatic stress disorder (PTSD), and congestive heart failure (nonischemic dilated cardiomyopathy).  Tr. 39, 80, 292.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 19-22.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*,

640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences

reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d

1047, 1051 (9th Cir. 2012).  The court may not substitute its

judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454

F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the

Commissioner determines the claimant is engaged in substantial

gainful activity (SGA).  20 C.F.R. § 404.1520(a)(4)(i).  *See*

*also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.

2011).

At Step Two the claimant is not disabled if the

Commissioner determines the claimant does not have any medically

severe impairment or combination of impairments.  20 C.F.R.

§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at

724.

At Step Three the claimant is disabled if the Commissioner

determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so

severe as to preclude substantial gainful activity.  20 C.F.R.

§ 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The

criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also*

*Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since April 14, 2015, Plaintiff's amended alleged disability onset date. Tr. 15.

At Step Two the ALJ found Plaintiff has the severe impairments of cardiomyopathy, organic mental disorder, affective disorder, and anxiety disorder. Tr. 15.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 16. The ALJ found Plaintiff has the RFC to perform light work with the following exertional limitations:

can occasionally climb ramps and stairs; can occasionally kneel, stoop, crouch, and crawl; and cannot climb ladders, ropes, or scaffolds.  Tr. 17.  The ALJ also found Plaintiff has the following nonexertional limitations:  can perform simple, routine tasks and have occasional contact with the public and coworkers.  Tr. 17.

At Step Four the ALJ concluded Plaintiff is unable to perform his past relevant work.  Tr. 23.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as router, cleaner/housekeeper, and marker.  Tr. 24.  Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 25.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to request a consultative neuropsychological examination in order to further develop the record regarding Plaintiff's mental-health impairment; (2) failed to provide clear and convincing reasons for rejecting the medical opinions of Frederick Van Dis, M.D., Plaintiff's treating cardiologist; (3) failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony; and (4) failed to provide germane

reasons for discounting the lay-witnesses' statements.

I.    **The ALJ did not err when he did not request a consultative neuropsychological examination of Plaintiff.**

Plaintiff contends the ALJ erred when he failed to develop the record further by requesting a consultative neuropsychological examination of Plaintiff.

    A.    **Standards**

The plaintiff has the burden to produce medical evidence to support his claim.  20 C.F.R. § 404.1512(a).  *See also Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).  The ALJ, however, bears the burden of developing the record when the evidence is ambiguous and the record is inadequate.  *Id.*  *See also Camky v. Colvin,* No. 6:12-cv-01973 BR, 2013 WL 6243503, at *5 (D. Or. Dec. 2, 2013).  The decision whether to request a consultative examination is within the discretion of the ALJ.  *See* 20 C.F.R. § 919a ("A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim.").  "An ALJ ha[s] no duty to develop the record . . . where the evidence was not ambiguous and the record was not inadequate to allow for proper evaluation of the evidence."  *Coleman v. Colvin*, No. 12-35207, 2013 WL 1694757, at *1 (9th Cir. Apr. 19, 2013).  *See also Ludwig v. Astrue*, 681 F.3d 1047,

1055 n.30 (9th Cir. 2012)("'An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'")(quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).  The ALJ's duty to develop the record, however, cannot be used to shift the burden of proof to the ALJ. *See Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001)(noting it is the claimant's "duty to prove she was disabled," and she cannot "shift her own burden" to the ALJ by virtue of the ALJ's duty to develop the record.).

**B.   Analysis**

As noted, Plaintiff alleged disabilities based on PTSD and TBI in his initial application for benefits.  Tr. 80.  On May 5, 2017, when Plaintiff amended his alleged disability onset date, he also alleged disability "based both upon his physical condition, with a diagnosis of cardiomyopathy, and his mental health."  Tr. 292.

Plaintiff contends he has a history of TBI, anxiety, and depression as a result of his motor-vehicle accident in 2010.  In April 2015 Plaintiff was admitted for inpatient treatment of his cardiac condition, and Shelley Brittain, M.D., the examining physician, opined Plaintiff was "tremendously

disabled by posttraumatic stress disorder." Tr. 515. Plaintiff contends the ALJ disregarded this evidence and erroneously concluded Plaintiff's mental-health findings were "unremarkable." Tr. 20.

Plaintiff further contends the record regarding the severity and functional limitations of his mental impairments was insufficient and/or ambiguous, and the ALJ, therefore, was required to obtain a consultative neuropsychological examination to develop the record fully and fairly. Although at the time he amended his alleged disability onset date Plaintiff requested the ALJ to refer him for "a consultative evaluation to include neuropsychological testing because of the traumatic brain injury he suffered in 2010," he did not request the ALJ to develop the record further at the administrative hearing.

The ALJ noted Plaintiff reported on April 29, 2015, that his PTSD was "under better control tha[n] it has been in a long time" (Tr. 422); in May 2015 Plaintiff reported feeling stronger "physically, mentally and emotionally" (Tr. 403); and in June 2015 Plaintiff reported his belief that he could go back to work (Tr. 412). Tr. 20. The ALJ, therefore, did not refer Plaintiff for any consultative examination following the administrative hearing.

The Court notes Plaintiff has not identified any functional limitation that was excluded from the ALJ's assessment of Plaintiff's RFC nor has Plaintiff identified any inadequacy in the record that would require the ALJ to request a consultative examination. In addition, Plaintiff has not pointed to any ambiguity in the record requiring additional evidence for resolution of any such ambiguity.

Accordingly, the Court concludes the ALJ did not err when he did not develop the record further by requesting a consultative neuropsychological examination of Plaintiff.

## II. The ALJ did not err when he discounted the medical opinion of Dr. Van Dis.

Plaintiff contends the ALJ failed to provide clear and convincing reasons supported by substantial evidence in the record for discounting the opinions of Dr. Van Dis, Plaintiff's treating cardiologist.

### A. Standards

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an

ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

## B. Analysis

Plaintiff contends the ALJ failed to consider properly the opinion of Dr. Van Dis.

In March 2016 Dr. Van Dis concluded Plaintiff was "permanently disabled" based on Plaintiff's cardiomyopathy and

organic brain syndrome caused by closed head injury," and "the combination of [Plaintiff's] need to work only part-time because of fatigue and complications of his cardiomyopathy and the PTSD and depression that he experiences render him unemployable." Tr. 787. In February 2017 Dr. Van Dis also opined Plaintiff's cardiomyopathy, congestive heart failure, and PTSD "are chronic [and] will require long term treatment — probably life-long," Plaintiff would need to rest "approximately an hour in the AM [and] PM," and Plaintiff would miss work more than four days per month. Tr. 845-47.

The ALJ noted Plaintiff's cardiomyopathy did not meet the listing for chronic heart failure. In his assessment of Plaintiff's RFC the ALJ, nevertheless, recognized Plaintiff's cardiomyopathy symptoms and limited Plaintiff to light physical exertion. Tr. 16, 18-19. The ALJ, however, gave "little weight" to Dr. Van Dis's opinion that Plaintiff is "disabled" and "unemployable" on the ground that such a conclusion constitutes a determination of disability reserved to the Commissioner. An opinion regarding the ultimate determination of disability is not entitled to any special weight. 20 C.F.R. § 404.1527(d). *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001)(noting the ALJ is not bound by the

opinion of a treating physician with respect to the ultimate determination of disability). The ALJ also discounted Dr. Van Dis's opinion on the ground that it was not supported by the medical record. For example, in November 2015 Plaintiff reported he did not have any symptoms during the prior three weeks. Tr. 642. In May 2016 Plaintiff could not distinguish whether the symptoms he was experiencing were because of a "nasty" divorce from his ex-wife or secondary to his heart disease. Dr. Van Dis concluded "it is the former rather than the latter given [Plaintiff's] improvement in exercise capacity, blood pressure, weight gain and appearance" and that Plaintiff's most recent echocardiogram showed "significant improvement" over his baseline echocardiogram. Tr. 777. In February 2017 Dr. Van Dis indicated Plaintiff had not had any symptoms since his last visit six weeks earlier, was walking 2.2 miles "when not depressed," and did not exhibit any new symptoms. Tr. 890.

The ALJ also rejected Dr. Van Dis's opinion that Plaintiff was unemployable on the ground that it was inconsistent with the record because Plaintiff was engaged in substantial gainful activity from January 2014 through March 2015. Tr. 22. The Court notes, however, that Plaintiff's employment occurred before his amended alleged disability onset

date.  Although the Court concludes, this was not a proper basis for the ALJ to discredit Dr. Van Dis's opinion, this error was harmless because the ALJ properly discounted Dr. Van Dis's opinion on the ground that it is not supported by the medical record.  Tr. 22.

On this record the Court concludes the ALJ discounted properly the opinion of Dr. Van Dis and provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## III. The ALJ did not err when he found Plaintiff's testimony was not fully credible.

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

### A.    Standards

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The

claimant need not show his "impairment could reasonably be
expected to cause the severity of the symptom [he] has alleged;
[he] need only show that it could reasonably have caused some
degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting
*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A
claimant is not required to produce "objective medical evidence
of the pain or fatigue itself, or the severity thereof."  *Id*.

If the claimant satisfies the first step of this
analysis and there is not any affirmative evidence of
malingering, "the ALJ can reject the claimant's testimony about
the severity of [his] symptoms only by offering specific, clear
and convincing reasons for doing so." *Garrison*, 759 F.3d at
1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of
malingering based on affirmative evidence thereof, he or she may
only find an applicant not credible by making specific findings
as to credibility and stating clear and convincing reasons for
each.").  General assertions that the claimant's testimony is
not credible are insufficient.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007).  The ALJ must identify "what testimony is
not credible and what evidence undermines the claimant's
complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995)).

**B.  Analysis**

Plaintiff testified on a typical day he wakes up, makes breakfast and coffee and then takes a break that can last between 30 minutes to two hours.  Following that break Plaintiff does chores such as washing the dishes and putting them away and then takes another break before he can do another chore. Tr. 44.  "If I go from one chore to the next . . . and push myself too hard[,] then I spend the next one to two days sedentary just recovering from the work I had done the day before."  *Id.*  Plaintiff also testified he had been walking at the advice of his medical providers and that he started out walking one hundred yards at a time, which he gradually increased to 2.2 miles.  Tr. 47, 51.  He testified he experiences shortness of breath, increased heart rate, visual changes, and blackouts with overexertion.  Tr. 54.  Plaintiff claimed his heart condition would prevent him from doing anything physically or mentally demanding for eight hours "without at least a three-hour break in the middle."  Tr. 58-59. He also testified it was extremely difficult to be in public with crowds because in his mind "it is a threat, it's dangerous," and "[t]here's people that want to hurt me."

Tr. 52.

The ALJ concluded Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 18. For example, the ALJ noted Plaintiff reported to his cardiologist in April 2015 that he had "been walking and feeling better" even though he was "a bit tired with exertion." Tr. 19, 425. By June 2015 Plaintiff reported he thought he could return to work. Tr. 20, 412. In August 2015 Plaintiff had an episode of "subjective tachycardia," but he denied having "chest pains, shortness of breath, and orthopnea" and that he was "asymptomatic at rest." Tr. 19-20, 535. By November 2015 Plaintiff reported he had not had any symptoms since his last examination three weeks earlier. Tr. 20, 642. In January 2017 Plaintiff stated he was walking up to 1.5 miles daily although he still got fatigued. Tr. 21. 887.

On this record the Court concludes the ALJ did not err when he discounted Plaintiff's general symptom testimony and found it was not fully credible because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**IV. The ALJ did not err when he discounted lay-witnesses' statements.**

Plaintiff contends the ALJ erred when he failed to provide germane reasons for discounting the lay-witness statements of Steven C., Plaintiff's father, and Shilo Hester, a vocational rehabilitation counselor, regarding Plaintiff's limitations.

**A. Standards**

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006). Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

The ALJ is not required, however, "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting

testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012.)

**B.   Analysis**

Plaintiff contends the ALJ erred when he failed to provide germane reasons for discounting the lay-witness statements of Steven C., Plaintiff's father.

On July 24, 2015, Steven C. provided a Function Report regarding his observations of Plaintiff's limitations.  Tr. 238-45.  He indicated Plaintiff was under full doctor's care and not released to perform any work.  Tr. 238.  He noted Plaintiff tired easily, he had to limit his physical activity, and he had difficulty falling and staying asleep.  Tr. 238-40.  He also noted, however, that Plaintiff was able to take care of his own personal needs, including cooking, cleaning, and general housework limited to one hour a day.  Tr. 239-40.  Plaintiff shopped for food and basic needs once a week, read, watched television, and visited with others although he had minimal contact with friends.  Tr. 241-42.

The ALJ gave "little weight" to Steven C.'s general assessment on the grounds that it was inconsistent with his

statement that Plaintiff took care of personal and household tasks and failed to account for Plaintiff's own statements regarding his ability to walk long distances.  Tr. 23.  The ALJ gave some weight to Steven C.'s statement that Plaintiff was uncomfortable around people on the ground that it was consistent with opinions from medical examiners.  The ALJ also noted he included in his evaluation of Plaintiff's RFC a limitation for only occasional interaction with the public and coworkers.

Plaintiff also contends the ALJ erred when he failed to address a statement by Shilo Hester, a vocational rehabilitation counselor.  Plaintiff participated in vocational rehabilitation services between November 2014 and July 2015. Tr. 525-32.  On July 29, 2015, Hester closed Plaintiff's case and noted:  "[Plaintiff] seems to be struggling with accepting his current mental and medical health status.  He is not stable and he is unable to participate in services including work at this time."  Tr. 527.  The ALJ did not specifically address Hester's statements.  The Court, however, noted Hester did not provide any meaningful information about Plaintiff's limitations but merely stated a conclusion about Plaintiff's vocational readiness.  *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999)(ALJ may reject a medical opinion that does

not show how a claimant's symptoms translate into specific functional limitations).  To the extent that the ALJ erred in failing to consider Hester's statements, the Court concludes the error was harmless because the ALJ provided sufficient reasons for rejecting similar testimony by Plaintiff's father and Dr. Van Dis.  *See Molina v. Astrue*, 674 F.3d 1104, 1116-17 (9th Cir. 2012)(failure to mention lay-witness testimony is harmless error if the ALJ provided sufficient reasons for rejecting similar testimony).

On this record the Court concludes the ALJ did not err when he discounted the lay-witness statements of Steven C., Plaintiff's father, and Shilo Hester, vocational rehabilitation counselor, because the ALJ provided germane reasons for doing so.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 8th day of October, 2019.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge